**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEJANDRO CARDENAS RAMIREZ, A-221-416-312<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER,<br><br>Respondents. | No. 1:26-CV-03386-DJC-ICD-HC-<br><br><u>ORDER</u><br><br><u>And</u><br><br><u>AMENDED FINDINGS AND RECOMMENDATIONS</u> |

Petitioner Alejandro Cardenas Ramirez, an immigration detainee proceeding with appointed counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 15. On September 23, 2026, the undersigned recommended granting the amended petition in part and ordering a new bond hearing at which the government would bear the burden of proof by clear and convincing evidence. ECF No. 22. Both parties objected. ECF Nos. 24, 25.

Each side's objections have merit in part. Respondent is right that the prior recommendation relied on defects in a bond hearing Petitioner never challenged, and that <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189 (9th Cir. 2022), forecloses his procedural due process claim. Petitioner is right that his amended petition also raises a substantive due process claim, and that the conditions of his confinement bear on it. Applying the framework used in <u>Zhang v. Warden</u>, No. 1:26-cv-02276-DJC-SCR, ECF No. 26 (E.D. Cal. Sept. 21, 2026), the undersigned concludes that Petitioner's detention has become excessive in relation to its legitimate purposes, which supervised release can adequately serve. The undersigned therefore vacates the prior findings and recommendations and recommends that Petitioner be released under conditions of supervision.

/ / /

## I. BACKGROUND

### A. Facts

Petitioner, a citizen of Colombia, entered the United States lawfully on a visitor visa in June 2023 and later obtained student status. ECF No. 15 at 3. Before his detention, he was employed, and his mother, who lives in Utah, depends on him. Id. at 5. In December 2025, he married a United States citizen. Id. at 4.

Petitioner has had three encounters with law enforcement. According to his mother, the first was a citation for buying or possessing tobacco as a minor. A warrant issued when he did not receive a video-call summons; he then appeared in court and paid the fine. The second was a charge for using or possessing drug paraphernalia, in which he missed a court date because he was in immigration custody. ECF No. 19-1 at 3. The third was a September 28, 2025, arrest in Utah after a traffic stop, which led to a DUI charge. ECF No. 15 at 4; ECF No. 18 at 2. His immigration counsel acknowledges "criminal convictions" that may require a waiver of inadmissibility. ECF No. 15-1 at 2.

Removal proceedings began on September 30, 2025, ECF No. 18-1 at 3, and U.S. Immigration and Customs Enforcement (ICE) took Petitioner into custody two days later under 8 U.S.C. § 1226(a), ECF No. 15 at 4. He is held at the California City Detention Facility (the "facility"). Id. at 3. On November 5, 2025, an immigration judge (IJ) denied bond in a written order that reads: "Danger. Denied. Three arrests since arrival in the U.S. in June 2023. Pending DUI. Refer to my oral decision." ECF No. 18 at 2 (quoting ECF No. 6-2 at 1). Petitioner did not appeal to the Board of Immigration Appeals (BIA) and has not requested a redetermination from an IJ. ECF No. 18 at 1, 3.

Petitioner's wife filed a Form I-130 Petition for Alien Relative on his behalf in January 2026. ECF No. 15 at 4. U.S. Citizenship and Immigration Services (USCIS) denied it in May 2026 because the spouses were not physically together at their virtual wedding and had not consummated the marriage, as INA § 101(a)(35) requires. ECF No. 18-1 at 1, 3–4. An appeal is pending, and a new I-130, Form I-485 Application to Register Permanent Residence or Adjust Status, and a Form I-601 Application for Waiver of Grounds of Inadmissibility have since been

filed. ECF No. 18 at 3; ECF No. 25-1 at 2. Petitioner has attended his immigration court hearings, which have occurred about every two months since November 2025. ECF No. 18 at 2. As of September 1, 2026, the proceedings remained pending. ECF No. 21 at 5. Respondent offers no estimate of when they will end. See ECF No. 18 at 2–3.

Petitioner reports that in detention he has suffered gastritis, migraines, insomnia, anxiety, and depression without adequate medical care. ECF No. 15 at 5, 14. He also reports diagnoses of major depressive disorder, anxiety disorder, post-traumatic stress, and skin and scalp infections that he attributes to unsanitary conditions. ECF No. 21 at 4. In December 2025, the California Department of Justice found the facility unsafe and unsanitary and its health-care system inadequate. ECF No. 15 at 11–12. While detained, Petitioner has completed courses on drug and alcohol abuse, substance abuse, and anger management. ECF No. 19-1 at 3.

**B. Procedural History**

Petitioner filed this action *pro se* in May 2026. ECF No. 1. The District Judge denied Petitioner's motion for a temporary restraining order and appointed counsel to brief his prolonged-detention claims. ECF No. 7. The amended petition raises two claims. First, Petitioner alleges that his prolonged detention without a second bond hearing—at which the government bears the burden of proof—violates procedural due process. ECF No. 15 at 7–11. Second, he argues that his continued confinement has become punitive in violation of substantive due process. Id. at 11–14. Petitioner seeks immediate release or, in the alternative, a second bond hearing. Id. at 14. The undersigned previously issued findings and recommendations to grant a second hearing, ECF No. 22, to which both parties filed objections, ECF Nos. 24, 25.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (plurality opinion) (citing U.S. Const. art. I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001).

## III. DISCUSSION

### A. Respondent's Party-Presentation Objection

Respondent first objects that the prior findings and recommendations decided, absent Petitioner's presentation, that the November 2025 custody hearing was constitutionally inadequate. ECF No. 24 at 2–3. Petitioner responds that the Court may consider the prior hearing and its record in deciding whether his continued detention is constitutional. ECF No. 25 at 6–7.

"In our adversarial system of adjudication, we follow the principle of party presentation." United States v. Sineneng-Smith, 590 U.S. 371, 375 (2020). Courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Greenlaw v. United States, 554 U.S. 237, 243 (2008). The principle is "supple, not ironclad," Sineneng-Smith, 590 U.S. at 376. When a claim is properly before the court, the court "is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991).

Here, Petitioner expressly disclaimed any contention that his initial bond hearing was defective. ECF No. 15 at 2. The prior findings and recommendations nonetheless concluded that Respondent had "not demonstrated that Petitioner received a constitutionally compliant initial bond hearing," and relied on that conclusion in recommending relief. ECF No. 22 at 3–4. On that point, Respondent's objection is well taken. Accordingly, these amended findings and recommendations do not rest on any determination that the November 2025 hearing, or the IJ's decision resulting therefrom, was deficient.

That conclusion does not, however, place the evidence underlying the IJ's decision beyond this Court's consideration. Petitioner's substantive due process claim asks whether his continued detention remains reasonably related to the government's legitimate interests in preventing flight and protecting the community. Answering that question requires the Court to weigh the evidence bearing on those interests, including the criminal history on which the IJ relied. See Doe v. Becerra, 732 F. Supp. 3d 1071, 1086–87 (N.D. Cal. 2024) ("Doe II"); Zhang, No. 1:26-cv-02276-DJC-SCR, ECF No. 26 at 8 (weighing evidence of dangerousness where an IJ

had previously denied bond on that ground). In doing so, the Court asks whether, on the present record, the government's interests justify continuing to deprive Petitioner of his liberty. That inquiry falls squarely within the scope of the claim Petitioner presented. See ECF No. 15 at 11–14.

**B. Exhaustion**

Respondent next renews the argument that Petitioner must first appeal to the BIA or seek a bond redetermination from an IJ before seeking federal habeas relief. ECF No. 24 at 3 (citing Leonardo v. Crawford, 646 F.3d 1157, 1160–61 (9th Cir. 2011); Puga v. Chertoff, 488 F.3d 812, 815–16 (9th Cir. 2007); Laing v. Ashcroft, 370 F.3d 994, 998–1001 (9th Cir. 2004)). Because 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, any such requirement is strictly prudential. Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017); Laing, 370 F.3d at 997–98. A court may require it when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Hernandez, 872 F.3d at 988 (quoting Puga, 488 F.3d at 815).

None of those conditions apply here. Leonardo required exhaustion because the petitioner challenged the IJ's bond decision itself, an error the BIA could correct. 646 F.3d at 1160–61. Petitioner challenges no such decision; he claims that his detention has, in the course of time, become punitive. The agency has no special expertise in that constitutional question. A redetermination would ask only whether Petitioner has shown materially changed circumstances, with the burden on him. 8 C.F.R. §§ 236.1(c)(8), 1003.19(e). Excusing exhaustion would not reward bypass, because the claim rests on events after November 2025 that an appeal of the IJ's decision could not have raised. And whatever the agency did, the constitutional question would remain.

These constitutional questions are of the utmost importance and gravity. "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). Accordingly,

courts in this district regularly excuse exhaustion under similar circumstances. See, e.g., Cerezo v. Warden, Cal. City Det. Facility, No. 1:26-cv-04592-DJC-EFB, ECF No. 17 at 3 (E.D. Cal. Aug. 5, 2026) (citing Bayani v. LaRose, No. 26-cv-0266-JES-VET, 2026 WL 1270059, at *4–5 (S.D. Cal. May 8, 2026)).

**C. Procedural Due Process**

Petitioner's first claim is that due process entitles him to a second bond hearing at which the government bears the burden of proof and this claim fails under Rodriguez Diaz. There, the Ninth Circuit held that the procedures available under § 1226(a) "satisfy due process, both facially and as applied to" a detainee held longer than Petitioner. 53 F.4th at 1213; see id. at 1193–95. Those procedures are a custody determination by ICE, a bond hearing before an IJ, a further hearing upon a material change in circumstances, and BIA review. Id. at 1207–13; see also Jennings v. Rodriguez, 583 U.S. 281, 304–06 (2018). The court did "not foreclose all as-applied challenges," 53 F.4th at 1213, but Petitioner identifies nothing that sets his case apart. He does not challenge his hearing, has not sought a redetermination, and relies only on the passage of time and changed circumstances. ECF No. 15 at 2–3. The prior findings relied instead on Banda v. McAleenan, 385 F. Supp. 3d 1099 (W.D. Wash. 2019), which predates Rodriguez Diaz and involved a § 1225(b) detainee who had no bond hearing at all. See id. at 1105–06, 1108–09. The undersigned therefore withdraws the recommendation of a second hearing and recommends denying this claim.

**D. Substantive Due Process**

1. *Rodriguez Diaz* Does Not Foreclose Petitioner's Substantive Due Process Claim

The Due Process Clause "protects individuals against two types of government action": those that violate substantive due process and those that violate procedural due process. United States v. Salerno, 481 U.S. 739, 746 (1987). Rodriguez Diaz addressed only the latter. Applying Mathews, it asked what procedures due process requires before a § 1226(a) detainee may continue to be held. It did not address whether continued detention may become punitive, and therefore unconstitutional, regardless of the procedures afforded. And Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008), on which Respondent also relies, addressed whether § 1226(a)

authorized the petitioner's detention while he sought judicial review of his removal order, whether that detention had become indefinite, and whether the bond hearings he received satisfied due process. See id. at 1062–66. It did not consider a claim that detention had become punitive in light of its length, the strength of the government's interests, and the conditions of confinement.

Respondent is correct that "[l]ength alone does not transform otherwise lawful civil detention into a constitutional violation." ECF No. 24 at 4. Petitioner's claim, however, does not rest on duration alone, and neither does the analysis below. Civil detention is constitutionally permissible only "in certain special and 'narrow' nonpunitive 'circumstances,' where a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" Zadvydas, 533 U.S. at 690 (citations omitted). "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972).

A civil detainee who has not been convicted of a crime may not be subjected to punitive treatment. See Bell v. Wolfish, 441 U.S. 520, 535 (1979); Jones v. Blanas, 393 F.3d 918, 931–32 (9th Cir. 2004). In the analogous pretrial detention setting, "[a] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021).

In the immigration context, the sole legitimate purposes of detention are ensuring a noncitizen's appearance at future proceedings and protecting the community from danger. See Zadvydas, 533 U.S. at 690; Demore v. Kim, 538 U.S. 510, 532 (2003) (Kennedy, J., concurring) (noting that a noncitizen "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified"). Courts in this district regularly recognize that substantive due process claims are available to immigration detainees challenging prolonged detention. See Rivera Larios v. Wofford, No. 1:26-cv-01498-DJC-CKD, ECF No. 16 at 9 (E.D. Cal. Mar. 18, 2026) (recognizing the availability of such claims but finding the specific challenge premature); Doe v. Chestnut, No. 1:24-cv-00943-EPG (HC), ECF No. 24 at 36 (E.D. Cal. Nov. 20, 2025) (granting habeas relief on a substantive

due process claim).

2. Petitioner's Conditions Allegations

The prior findings and recommendations concluded that Petitioner's conditions-of-confinement claim does not sound in habeas. ECF No. 22 at 3 (citing Bakshta v. Chestnut, No. 1:26-cv-01796-DJC-SCR, ECF No. 12 at 2 (E.D. Cal. June 3, 2026)). Petitioner objects that he challenges his continued custody as punitive, not merely the adequacy of particular services at the facility. ECF No. 25 at 2–3. Respondent maintains that conditions claims are not cognizable in habeas, that they "cannot be used to redesign habeas remedies," and that the facility's conditions are already being addressed in a class action in the Northern District of California. ECF No. 24 at 1, 4; ECF No. 18 at 5.

A claim sounds in habeas only if its success would necessarily demonstrate that the confinement or its duration is invalid. Thus, "a successful claim sounding in habeas necessarily results in release, but a claim seeking release does not necessarily sound in habeas." Pinson v. Carvajal, 69 F.4th 1059, 1072–73 (9th Cir. 2023). A claim that conditions of confinement are unconstitutional falls outside the core of habeas, even if the petitioner asks to be released, when the violation could be cured by relief short of release, such as improved medical care. See id. To the extent Petitioner seeks better medical care or changes in how the facility operates, his claim is of that kind. The class-wide injunctive relief Respondent describes, ECF No. 18 at 5, is an example of relief short of release that may address such concerns. The undersigned therefore continues to recommend that this aspect of the claim be denied, without prejudice to its pursuit in an appropriate civil action.

Petitioner's substantive due process claim is different. It contends that his detention itself has become excessive in relation to its regulatory purpose, and therefore punitive, when its length, the strength of the government's interests, the availability of less restrictive alternatives, and the conditions under which it is carried out are considered together. If that claim succeeds, the constitutional defect lies in the continued confinement, and improvements at the facility would not cure it; the remedy is release, subject to appropriate conditions. That is a challenge to the fact of custody, which lies at the core of habeas. See Zadvydas, 533 U.S. at 687–88, 699–700. In

assessing that claim, the conditions of confinement are relevant because they bear on whether detention has become punitive in effect. See Jones, 393 F.3d at 932; Doe II, 732 F. Supp. 3d at 1080. The prior findings and recommendations recognized as much when they observed that conditions "inform" the reasonableness of continued detention. ECF No. 22 at 4. Petitioner's objection is therefore well taken to the extent he asks that the conditions of his confinement be considered as part of his substantive due process claim.

3. Application of the *Doe II* Factors

The undersigned evaluates Petitioner's substantive due process claim using five factors drawn from Doe II: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight or danger to the community; (4) whether the government's interests in ensuring appearance and protecting the community could be served through less harsh alternatives to detention; and (5) the conditions of detention and how they compare to those under which pretrial criminal detainees or convicted prisoners are held. Doe II, 732 F. Supp. 3d at 1080.

a. *Length of Detention*

"It is undisputed that at some point, pretrial detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). The same principle applies to civil immigration detention. See Zadvydas, 533 U.S. at 690. In upholding mandatory detention under 8 U.S.C. § 1226(c), the Supreme Court emphasized that such detention typically lasts "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Demore, 538 U.S. at 530. Petitioner has been in ICE custody since October 2, 2025, and over twelve months have elapsed since he was taken into custody, with nearly eleven months having passed since the IJ's custody decision. This duration is substantially longer than the nine-month detention that the court in Zhang found "undoubtedly prolonged." Zhang, ECF No. 26 at 7; see also Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (detention of more than seven months under § 1225(b) was prolonged).

Nor does Petitioner's detention have a fixed endpoint. His removal proceedings remain pending before an IJ. ECF No. 21 at 5. Respondent has offered no estimate of when they will conclude, ECF No. 18 at 2–3, and whatever the IJ decides may be appealed to the BIA. Petitioner's applications for relief (the appeal of the first Form I-130 denial and the newly filed Forms I-130, I-485, and I-601) also remain pending. ECF No. 25-1 at 2. Respondent argues that adjustment of status is not "likely" because the first Form I-130 was denied and Petitioner will need a waiver. ECF No. 24 at 4. The undersigned expresses no view on the merits of Petitioner's applications. Their pendency matters here because it confirms that Petitioner's proceedings are unlikely to end soon, and, as discussed below, it gives Petitioner a concrete incentive to appear.

The undersigned agrees with Respondent that twelve months of detention does not, standing alone, violate substantive due process. See Torres, 995 F.3d at 699 (stating that pretrial detention that would reach twenty-one months by trial was "likely approaching the outer bounds of due process"). But "whether this prolonged detention is excessive and therefore punitive is a relative question." Doe II, 732 F. Supp. 3d at 1083. Its length must be weighed against the "regulatory purposes for detention—preventing flight risk and protecting public safety" and against the conditions of detention. Id. That weighing appears below. This factor favors Petitioner.

b. *Responsibility for Delay*

The second factor "addresses the reasons for any delays that have contributed to the duration of detention." Doe II, 732 F. Supp. 3d at 1083; see United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988). Respondent has suggested that Petitioner's detention has been prolonged by his choice to contest removal and by his not having filed an adjustment application. See ECF No. 15 at 4–5 (citing ECF No. 6 at 5 n.2); ECF No. 18 at 3–4. Petitioner responds that the immigration court could not adjudicate adjustment until USCIS acted on the I-130. ECF No. 15 at 4–5; ECF No. 15-1 at 2. On this record, neither party is primarily responsible for the length of Petitioner's detention. Petitioner has attended his hearings, ECF No. 18 at 2, and pursuing a spousal petition and related applications that the immigration laws make available is not the kind of dilatory conduct that should weigh against him. Nor does the record show unreasonable delay

by the government. This factor is neutral.

c. *Evidence of Flight Risk and Danger*

The central question is how well continued detention serves its regulatory purposes, which requires an assessment of the evidence bearing on flight risk and danger. See Doe II, 732 F. Supp. 3d at 1086–87. As explained above, the undersigned does not revisit the IJ's November 2025 decision. The question is whether the present record shows that the government's interests still require Petitioner's detention. Any risks "must also be considered in conjunction with the next related factor—whether any risks can be mitigated through alternatives to detention." Id. at 1087.

On flight risk, the IJ's written decision understandably does not rest on this factor. ECF No. 18 at 2. The record reflects that Petitioner entered the United States lawfully, obtained a change to student status, worked before his detention, is married to a United States citizen, and has a mother who depends on him. ECF No. 15 at 3–5. He is pursuing relief that requires his continued participation in immigration and USCIS proceedings, which gives him a strong incentive to appear. ECF No. 21 at 5; ECF No. 25-1 at 2. The record also reflects two failures to appear in state court, but both have been explained: one followed a summons Petitioner reportedly did not receive, after which he appeared and paid the fine, and the other occurred while he was in immigration custody. ECF No. 19-1 at 3. Respondent's objections neither dispute those explanations nor argue that Petitioner presents a flight risk. See ECF No. 24. On this record, any risk of flight is modest.

On danger, the government's interest in protecting the community is legitimate, and the undersigned does not minimize it. Driving under the influence endangers the public, and the BIA treats it as a significant adverse consideration in assessing dangerousness. See Matter of Siniauskas, 27 I. & N. Dec. 207, 208–09 (BIA 2018). But the DUI charge against Petitioner was unadjudicated when the IJ ruled, and nothing in the record shows that it has since been resolved. ECF No. 18 at 2. Petitioner's other two encounters with law enforcement, including a tobacco citation as a minor, resolved by a fine, and a drug-paraphernalia charge, are minor and non-violent. ECF No. 19-1 at 3. Nothing in the record suggests that Petitioner has engaged in violence or used a weapon. And while detained, he has completed courses addressing drug and alcohol

abuse. Id.

That record is considerably less serious than the one in Zhang, where the petitioner faced pending charges that included exploiting prostitution, forgery, and communications fraud and was suspected of involvement in human trafficking. Zhang, ECF No. 26 at 1–2, 8. The magistrate judge there nonetheless concluded that a finding of present dangerousness was unwarranted and recommended release with monitoring. Id. at 8, 11–12. The undersigned recognizes that the petitioner in Zhang had complied with criminal pretrial release for more than eighteen months, id. at 8, and that this record contains no comparable history. But the risk this record does reflect is narrower as it arises from a single pending charge of impaired driving, and targeted conditions of release can address it directly. On this record, the evidence of danger does not show that Petitioner's continued detention, rather than supervised release, is necessary to protect the community.

d. *Alternatives to Detention*

The fourth factor asks whether the government's interests in ensuring Petitioner's appearance and protecting the community could be served through less restrictive alternatives. Doe II, 732 F. Supp. 3d at 1080. They could. ICE's Intensive Supervision Appearance Program ("ISAP") offers alternatives such as GPS tracking, a smartphone app, and telephonic reporting, and the Department of Homeland Security has reported that the "vast majority" of participants comply with the program's requirements. Doe v. Chestnut, ECF No. 24 at 32; see Zhang, ECF No. 26 at 9. Those tools are designed to address flight risk, and they substantially reduce whatever interest in detention remains on that score.

The same is true of the danger the record reflects. Because that concern arises from impaired driving, conditions aimed squarely at that conduct can address it. Examples include a prohibition on driving without a valid license and insurance, restrictions on alcohol use, alcohol testing or monitoring, and compliance with any conditions imposed in the pending state criminal case. Electronic monitoring also gives a person "at least some additional incentive not to engage in criminal conduct." Doe II, 732 F. Supp. 3d at 1088. And any release would be subject to re-detention if Petitioner violates its terms. See Zadvydas, 533 U.S. at 700. This factor weighs

strongly in Petitioner's favor.

e. *Conditions of Confinement*

Substantive due process also limits the conditions under which civil detainees may be held. Doe II, 732 F. Supp. 3d at 1080. "[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'" Jones, 393 F.3d at 932.

Petitioner's allegations of inadequately treated physical and mental health conditions and unhygienic conditions, ECF No. 15 at 5, 11–14; ECF No. 21 at 4, are consistent with other courts' findings about the same facility. In the Northern District class action, the court relied on unrebutted expert evidence that the facility's operators "struggle to deliver standard of care for common uncomplicated problems," that sick calls "describing urgent medical symptoms can go unaddressed or unacknowledged for days or weeks," and that "it is not safe to be sick" there. Gomez Ruiz v. U.S. Immigr. & Customs Enf't, No. 3:25-cv-09757-MMC, ECF No. 111 at 5–6 (N.D. Cal. Mar. 27, 2026). The court also noted expert evidence that detainees' outdoor recreation time is "less than prisoners in segregation are offered," id. at 10, and it found that the facility's lack of temperature-appropriate clothing and its insufficient outdoor recreation time were "both excessive in relation to any non-punitive purpose and employed to achieve objectives that could be achieved by other, less harsh methods." Id. at 13. In this district, another court concluded that the evidence suggested that conditions at the facility were "not only inherently harsh but also worse than the conditions Mr. Doe faced in state prison." Doe v. Chestnut, ECF No. 24 at 36 (quoting Doe II, 732 F. Supp. 3d at 1089). See also Tigranyan v. Warden of Cal. City Det., No. 1:25-cv-01554-DJC-SCR, ECF No. 16 at 9 (E.D. Cal. Jan. 13, 2026) (citing Disability Rights California's finding that the facility fails to provide necessary medical and mental health care), findings and recommendations adopted (E.D. Cal. Jan. 16, 2026).

Respondent's objections do not dispute Petitioner's account of the conditions he has experienced; they argue only that conditions allegations are not cognizable in a habeas corpus proceeding. ECF No. 24 at 4. For the reasons set forth above, however, these conditions are properly considered as part of Petitioner's substantive due process claim. Because the severe and

punitive nature of the environment lacks a regulatory justification, this factor weighs heavily in favor of Petitioner.

f. *Balancing*

The undersigned recognizes that the government's interests in ensuring appearance and protecting the community are "interests of the highest order that only increase with the passage of time." Rodriguez Diaz, 53 F.4th at 1208. On the present record, however, those interests can be adequately protected without continued detention. Petitioner has been detained for more than a year, with no fixed endpoint, in conditions at least as restrictive as criminal confinement. The government's interest in preventing flight is modest on this record. Its interest in protecting the community rests on minor, non-violent offenses and a single pending DUI charge; robust supervision and conditions targeted at that specific risk can sufficiently serve that interest. Under these circumstances, Petitioner's continued detention is excessive in relation to its regulatory purpose and has become punitive in violation of substantive due process.

g. *Remedy*

"Federal habeas corpus practice . . . indicates that a court has broad discretion in conditioning a judgment granting habeas relief," and federal courts "are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 (1987). Petitioner asks for release under reasonable conditions of supervision or, alternatively, a bond hearing with additional safeguards. ECF No. 25 at 3–6, 9. Respondent asks that any relief be limited to a prompt custody redetermination before an IJ, without shifting the burden of proof. ECF No. 18 at 2, 6.

Neither form of hearing is an adequate remedy here. The constitutional violation lies in Petitioner's continued detention, and a hearing would not cure detention that has already become excessive in relation to its purpose. A redetermination under existing procedures would place the burden on Petitioner and would not test whether his detention has become punitive. And for the reasons given in Part III.C, due process does not entitle him to the burden-shifted hearing the undersigned previously recommended. The appropriate remedy is release, with safeguards to mitigate any risk of flight or danger. See Zhang, ECF No. 26 at 11–12; Doe v. Chestnut, ECF No.

24 at 36–37; cf. Feng v. Lyons, No. 1:26-cv-00235-DJC-SCR, ECF No. 20 at 2–3 (E.D. Cal. Feb. 19, 2026) (adopting findings and recommendations in part but ordering release rather than the recommended bond hearing). As the Supreme Court has explained, a noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." Zadvydas, 533 U.S. at 700.

In alignment with Zhang, the undersigned recommends that Petitioner be released. Respondent should be permitted to impose conditions reasonably tailored to public safety. Because release is recommended, Petitioner's alternative requests concerning the conduct of a further bond hearing, ECF No. 25 at 9, are moot.

**E. Motion for Expedited Consideration**

Petitioner, though represented by appointed counsel, filed a pro se motion asking the Court to expedite its ruling. ECF No. 21. Considering these amended findings and recommendations, the motion should be denied as moot.

Accordingly, IT IS HEREBY ORDERED that the Findings and Recommendations issued September 23, 2026 (ECF No. 22) are VACATED and superseded by these Amended Findings and Recommendations.

Further, IT IS RECOMMENDED that:

1. The First Amended Petition for Writ of Habeas Corpus (ECF No. 15) be GRANTED IN PART and DENIED IN PART, as follows:
    a. The petition be GRANTED as to Petitioner's claim that his continued detention violates substantive due process;
    b. The petition be DENIED as to Petitioner's procedural due process claim seeking a second bond hearing at which the government bears the burden of proof; and
    c. To the extent the petition seeks relief directed at Petitioner's medical care or the conditions of his confinement other than release, the petition be DENIED without prejudice.

d. Respondent be ORDERED to IMMEDIATELY RELEASE Petitioner Alejandro Cardenas Ramirez (A-221-416-312) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions.

e. Respondent may re-detain Petitioner if (a) Petitioner violates the conditions of release and Respondent provides Petitioner notice and an opportunity to be heard as to the alleged violation, or (b) Petitioner becomes subject to an executable final order of removal and receives notice of that final order of removal.

f. Respondent shall file a notice confirming Petitioner's release within three (3) court days after the release.

2. Petitioner's Motion for Expedited Consideration (ECF No. 21) be DENIED AS MOOT.

These amended findings and recommendations are submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Because they supersede the findings and recommendations to which the parties' prior objections (ECF Nos. 24, 25) were directed, any party wishing to object must file objections to these amended findings and recommendations; a party may incorporate by reference arguments made in its prior objections.

Within **seven (7) days** after being served with these amended findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Amended Findings and Recommendations." Any response to the objections shall be filed and served within **seven (7) days** after service of the objections. A shortened objection period is warranted given the nature of the relief at issue and because the parties have fully briefed the issues, including in their prior objections. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam); E.D. Cal. L.R. 304(b). Failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 6, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE